# Oyster *against* Bellas.

A chamber survey returned is not void or a nullity, but although voidable, it is not such an expenditure of the authority under the warrant, as to preclude a further survey from being made on it, without an order of re-survey.

APPEAL by defendants from the circuit court of *Northumberland* county.

This was an action of ejectment by George Oyster and Sarah his wife against Hugh Bellas and Jacob Weiss. The plaintiff claimed upon a warrant dated the 18th of November 1793, on which there was a survey returned the 25th of October 1794, and a second survey, called a re-survey, the 25th of August 1814, and a patent upon the latter survey of the 26th of June 1829. The first survey under which the plaintiffs claimed was a chamber survey, and the second was made without an order of re-survey, or any authority in addition to the original warrant. The defendants claimed under a later warrant and survey: and the only question which arose was whether the return and acceptance of a chamber survey is void and a nullity ; or whether, though voidable, it is not such an expenditure of the authority under the warrant, as to preclude a further survey from being made on it without an order of re-survey ? The court below directed

the jury to give a verdict for the plaintiff, and the point was reserved for argument *in bank.*

*Merrill* and *Hepburn*, with whom was *Bellas*, for appellants, cited, on the origin and nature of surveys, Bennet *v.* Devebaugh, 3 *Binn.* 180; Turbett *v.* Nichols, 2 *Smith's Laws* 159, *in note;* Woods *v.* Ingersoll, 5 *Serg. & Rawle* 101; Wilson *v.* Stoner, 9 *Serg. & Rawle* 39; Bixler *v.* Baker, 4 *Binn.* 220; Barton *v.* Smith, 1 *Rawle* 403.

That a re-survey, without new authority, after a return of the first survey, is void. Drinker *v.* Holliday, 2 *Yeates* 89; Hollingshead *v.* Pollock, 2 *Yeates* 89, *in note;* Porter *v.* Ferguson, 3 *Yeates* 60; Nicholls *v.* Holliday, 3 *Yeates* 401; Biddle *v.* Dougal, 2 *Binn.* 38; Evans *v.* Nargang, 2 *Binn.* 58; Miles *v.* Potter, 2 *Binn.* 65; Deal *v.* M'Cormick, 3 *Serg. & Rawle* 343; Fugate *v.* Coxe, 4 *Serg. & Rawle* 294; Smith *v.* Fultz, 4 *Serg. & Rawle* 473; Healy *v.* Maul, 5 *Serg. & Rawle* 181; Light *v.* Woodside, 10 *Serg. & Rawle* 23; Vickroy *v.* Shelly, 14 *Serg. & Rawle* 372; Chambers *v.* Mifflin, 1 *Penns. Rep.* 79; Acre *v.* Gilbert, 3 *Penns. Rep.* 299; Lodge *v.* Simonton, 2 *Penns. Rep.* 439.

On the subject of delay in the execution of a warrant. Smith *v.* Fultz, 4 *Serg. & Rawle* 473; Chambers *v.* Mifflin, 1 *Penns. Rep.* 78; Star *v.* Bradford, 2 *Penns. Rep.* 384; 2 *Smith's Laws* 300, *in note.*

On the subject of a chamber survey. 2 *Smith's Laws* 256; Keble *v.* Anthues, 3 *Binn.* 26; Litle *v.* Paschall, 2 *Serg. & Rawle* 394; Werdman *v.* Felmly, 6 *Binn.* 39; 5 *Serg. & Rawle* 215; Bixle *v.* Baker, 4 *Binn.* 213; Burd *v.* Seebold, 6 *Serg. & Rawle* 137.

The owner of the warrant is presumed to know how his survey was made. 2 *Smith's Laws* 161; Hunter *v.* Meason, 2 *Yeates* 314; Porter *v.* Ferguson, 3 *Yeates* 60; Steel *v.* Finlay, 3 *Yeates* 169; Adams *v.* Goodlander, 2 *Yeates* 314; Smith *v.* Fultz, 4 *Serg. & Rawle* 473; Healy *v.* Maul, 5 *Serg. & Rawle* 187; Ruggles *v.* Gaily, 2 *Rawle* 232.

That the return of survey exhausts the power of the deputy surveyor. Carroll *v.* Andrews, 3 *Yeates* 60; Nicholas *v.* Holliday, 3 *Yeates* 401; Biddle *v.* Dougal, 2 *Binn.* 38; Miles *v.* Potter, 2 *Binn.* 65; Evans *v.* Nargang, 2 *Binn.* 58; Deal *v.* M'Cormick, 3 *Serg. & Rawle* 343; Healy *v.* Maul, 5 *Serg. & Rawle* 181; Lambourne *v.* Harlswick, 13 *Serg. & Rawle* 113; Vickroy *v.* Shelly, 14 *Serg. & Rawle* 372; Chambers *v.* Mifflin, 1 *Penns. Rep.* 78; Addleman *v.* Masterson, 1 *Penns. Rep.* 454; Star *v.* Bradford, 2 *Penns. Rep.* 384; Acre *v.* Gilbert, 3 *Penns. Rep.* 308.

*Packer* and *Greenough*, for appellees. The acceptance of the resurvey was equivalent to a precedent order unless interfering rights were prejudiced by it. Light *v.* Woodside, 10 *Serg. & Rawle* 23; Reynolds *v.* Dougherty, 3 *Serg. & Rawle* 325; Shields *v.* Buchanon, 2 *Yeates* 219; Woods *v.* Galbreath, 2 *Yeates* 306; Smay *v.* Smith, 1 *Penns. Rep.* 1; Nichols *v.* Holliday, 3 *Yeates* 399; Gripe *v.* Baird, 3

*Yeates* 528; Lauman *v.* Thomas, 4 *Binn.* 58; Funson *v.* M'Mahon, 2 *Yeates* 245; Bell *v.* Levers, 4 *Dall.* 210; Kyle *v.* White, 1 *Binn.* 249; Sproul *v.* Plumstead, 4 *Binn.* 189.

A false return by a legal officer is no return, and a good return may be afterwards made. If the return were not a nullity, it would be notice, and consequently a good appropriation. Potter *v.* Ferguson, 3 *Yeates* 60; Acre *v.* Gilbert, 3 *Penns. Rep.* 299.

The opinion of the Court was delivered by

GIBSON, C. J.—The question to be decided is, whether the return and acceptance of a chamber survey is void and a nullity; or whether, though voidable, it is not such an expenditure of the authority under the warrant, as to preclude a further survey from being made on it without an order of re-survey. As the cause seems to have turned on this point at the trial, my remarks shall be restrained to an examination of it.

That a re-survey may not be made without an order for it, is a principle which meets the eye at every turn and corner of our decisions on original title. The case for decision is attempted to be taken out of it, by insisting that a re-survey presupposes a precedent survey which consists of lines on the ground; that there was such a precedent survey in all the cases in the books, the object of the re-survey being to get clear of an older appropriation of at least a part of the land; and that the precedent survey being void, for not having been made on the ground, the survey in question is itself an original. That is the argument; and an objection to it might be found in the subtlety and refinement that would be involved in the application of its principle to particular cases. But to waive all that, what essential difference is there, in this respect, between a survey of appropriated land and a chamber survey, or, as it is here called, no survey at all? None but the unappropriated land of the commonwealth is open to acquirement by warrant and survey; and to lay a warrant on land previously disposed of, would be as nugatory, in regard to the title, as it would be to lay it on an island in the Susquehanna, or even on the surface of the water, where actual lines would be as destitute of effect as if they were but protracted on paper. Yet no one would pretend that a survey of appropriated land, is a legal nonentity. I am aware that it was said in Drinker *v.* Hunter, 2 *Yeates* 129, that subsequent surveys of patented land, unless the title is tainted with circumstances of suspicion or antecedent possession in the adverse party, "are merely void in themselves." But the very nature of the exception indicates that they are not void while their propriety is open to be controverted in the ordinary way before the board of property. The argument is, that it is the execution of the authority, and not the return of it, which is material to the legality of acts subsequently attempted under it; and that while the warrant remains legally unexecuted in the office of the surveyor-general, no return to him by his deputy can make

[Oyster v. Bellas.]

that an execution in point of law, which was not so in point of fact. In support of this position, analogies have been sought for in the execution of process at the common law; and among others, in a false return of *cepi corpus* to a *capias ad satisfaciendum*, which does not prevent the defendant from being taken in execution at any time before the return day of the writ. The reason is, because there is no return, in contemplation of law, before that day; and intermediate acts having relation to it, the party may still be taken into custody by virtue of the authority remaining in the officer till then; so that the fact returned is strictly true. In the same manner a survey on the ground may be abandoned before the actual return of the deputy, and another substituted for it; but as there is no stated return day for a warrant, the return of it is complete whenever it is actually made and accepted, and the analogy to be drawn from a common law writ is therefore against the position attempted to be sustained by it. In neither case can the falsity of the return make it a nullity, or the authority an abiding one after the return is complete so as to dispense with the necessity of a renewal. If the return were the act of the *deputy* alone, it might plausibly be said to determine but the authority which he received from the surveyor-general *pro hac vice*, and not the authority committed to the surveyor-general by the warrant which he might execute in person if he thought fit, and consequently accept of any subsequent survey as an execution of it. He may unquestionably do so if he has not accepted of a previous one, and made it his own act. And this distinguishes Light *v.* Woodside, 10 *Serg. & Rawle* 23, in which the first survey was positively rejected, from the unbroken series of decisions in which it has been held that a fresh order is indispensable to a valid survey subsequent to the return of a preceding one. Without confirmation by the surveyor-general, the law refuses to recognise the act of his assistant; and without his acceptance of the survey, the return to the warrant is incomplete; but when complete, it is the foundation on which the secretary of the land office proceeds to execute the contract by a patent. Purporting to be a valid execution of the warrant, and being a legitimate foundation for the action of the secretary, how can it be said to remain in the office of the surveyor-general a legal nonentity? Certainly a patent founded on it would not be void, as if there were no colour of a survey in that office. On the principle of Duer *v.* Boyd, 1 *Serg. & Rawle* 203, and M'Clay *v.* Work, 5 *Binn.* 157, it would make the patentee a trustee for him who has the right. If a second survey and acceptance, with no greater pretension to authenticity than the first, were to appear on the files of the surveyor-general's office, on which of the two would it be the duty of the secretary to issue the patent? To avoid the inconsistency and uncertainty of such a conjuncture, to say nothing of its tendency to mislead other appropriators, or of the use that might be made of it by colluding with the deputy, it is necessary that an accepted survey be disposed of on the files before another is

made; and that can be done only by an order of re-survey. By acceptance, the surveyor-general announces the consummation of his official duty, and I know not how he can resume it without a fresh command. In addition to this, a chamber survey might have effect in certain other points of view. It vests even an indefeasible title where it is applied to a tract, the lines of which have been previously run and marked under lawful authority; and in like manner it vests at least a defeasible title against the state without such running and marking, for it will scarce be pretended that a warrantee who had paid his money, could be turned out by the commonwealth, to whom it must be indifferent what land he got, provided it were a part of the mass offered for appropriation, and a doubt about the quantity would be more legitimately resolved by a re-survey. But, even where the title is defeasible, it is *prima facie* evidence of a survey on the ground; and that it can be deprived of that effect by being disproved, shows no more than that it is but voidable, and not void in the first instance. Finally, a *caveat* would lie to it, for the very reason that it is but an imperfect appropriation, which it would not do if it were a nullity. In every aspect, then, a new survey, on the same warrant, without a renewal of its authority, confers no title.

Judgment reversed, and a new trial awarded.